1

2

3

4

5

6

7

8 **UNITED STATES DISTRICT COURT**

9 **CENTRAL DISTRICT OF CALIFORNIA**

10 **EASTERN DIVISION**

11

12 GILBERT FRANCO,                          )          No. ED CV 08-1426-PLA
                                           )
13          Plaintiff,                     )
                                           )          **MEMORANDUM OPINION AND ORDER**
14          v.                             )
                                           )
15 MICHAEL J. ASTRUE,                      )
   COMMISSIONER OF SOCIAL                  )
16 SECURITY ADMINISTRATION,                )
                                           )
17          Defendant.                     )
                                           )

18

19                                           **I.**

20                                    **PROCEEDINGS**

21          Plaintiff filed this action on October 21, 2008, seeking review of the Commissioner's denial

22 of his applications for Disability Insurance Benefits and Supplemental Security Income.  The

23 parties filed Consents to proceed before the undersigned Magistrate Judge on November 25,

24 2008, and November 26, 2008.  Pursuant to the Court's Order, the parties filed a Joint Stipulation

25 on April 29, 2009, that addresses their positions concerning the disputed issues in the case.  The

26 Court has taken the Joint Stipulation under submission without oral argument.

27 /

28 /

1

## II.

## <u>BACKGROUND</u>

Plaintiff was born on January 29, 1954. [Administrative Record ("AR") at 63.] He has an eleventh grade education [AR at 93, 688], and past work experience as a construction foreman, concrete crew supervisor, and concrete finisher. [AR at 75, 81, 95-96.]

On August 12, 2004, plaintiff filed his applications for Disability Insurance Benefits and Supplemental Security Income payments, alleging that he has been unable to work since March 1, 2002, due to, among other things, hepatitis C, blood clots and swelling in his legs, and back problems. [AR at 30, 63-66, 73, 89.] After his applications were denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 32-43.] A hearing was held on April 11, 2006, at which plaintiff appeared without counsel and testified on his own behalf. Dr. Samuel Landau, a medical expert, also testified. [AR at 665-79.] A second hearing was held on May 31, 2006, at which plaintiff appeared with counsel and testified on his own behalf. Testimony was also elicited from Dr. Landau and a vocational expert. [AR at 680-705.] On June 29, 2006, the ALJ determined that plaintiff was not disabled. [AR at 12-19.] The Appeals Council denied plaintiff's request for review of the hearing decision on October 13, 2006. [AR at 4-6.] Plaintiff then filed an action in District Court, Case No. ED CV 06-1387-PLA, challenging the Commissioner's decision. On November 14, 2007, the Court remanded the matter for further proceedings, and ordered the ALJ to reconsider plaintiff's credibility concerning the limiting effects of his impairments. [AR at 718-29.] On December 21, 2007, the Appeals Council remanded the case for further proceedings. [AR at 734-36.] A third hearing was held on June 11, 2008, at which plaintiff appeared with counsel and testified on his own behalf. A vocational expert also testified. [AR at 798-823.] On July 17, 2008, the ALJ again determined that plaintiff was not disabled. [AR at 706-16.] On approximately September 17, 2008, the ALJ's decision became the final decision of the Commissioner. [Joint Stipulation ("JS") at 3.] This action followed.

/

/

/

### III.

### STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

### IV.

### THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.    THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the

1 claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in

2 substantial gainful activity, the second step requires the Commissioner to determine whether the

3 claimant has a "severe" impairment or combination of impairments significantly limiting his ability

4 to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.

5 If the claimant has a "severe" impairment or combination of impairments, the third step requires

6 the Commissioner to determine whether the impairment or combination of impairments meets or

7 equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404,

8 Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.

9 If the claimant's impairment or combination of impairments does not meet or equal an impairment

10 in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

11 sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled

12 and the claim is denied.  Id.  The claimant has the burden of proving that he is unable to perform

13 past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie

14 case of disability is established.  The Commissioner then bears the burden of establishing that the

15 claimant is not disabled, because he can perform other substantial gainful work available in the

16 national economy.  The determination of this issue comprises the fifth and final step in the

17 sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d

18 at 1257.

19

20 **B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

21         In this case, at step one, the ALJ found that plaintiff had not engaged in substantial gainful

22 activity at any time relevant to the decision.[1]  [AR at 712.]  At step two, the ALJ concluded that

23 plaintiff "has the following severe impairments: obesity; type II diabetes mellitus; history of deep

24 vein thrombosis of the lower left extremity with post-phlebitis syndrome (pain, edema); chronic

25 active hepatitis caused by HCV with one failed interferon treatment attempt; and degenerative disc

26

27

28         [1]     The ALJ also determined that plaintiff is insured for Disability Insurance Benefits purposes
through March 31, 2007.  [AR at 712.]

1  disease of the lumbar spine." [Id.]  At step three, the ALJ determined that plaintiff's impairments

2  do not meet or equal any of the impairments in the Listing. [Id.]  The ALJ further found that plaintiff

3  retained the residual functional capacity ("RFC")[2] "to perform a limited range of light work."

4  Specifically, the ALJ concluded that plaintiff is

5  
6  
7  
8  
9

> able to stand and/or walk for 15 minutes at one time for a total of two hours during an eight-hour workday; able to sit for six hours during an eight-hour workday with normal breaks and a provision to elevate his legs six inches above the floor level as needed; able to lift and/or carry 20 pounds occasionally and ten pounds frequently; cannot bend or stoop to pick things up off the floor; cannot crawl; able to climb stairs, but cannot climb ladders; cannot work at heights; cannot balance; should work indoors in an air-conditioned environment; and must be allowed to wear adult diapers and use the restroom once every hour.

10  [AR at 712-15.]  At step four, the ALJ concluded that plaintiff is not capable of performing his past

11  relevant work. [AR at 715.]  At step five, the ALJ found that there are a significant number of jobs

12  in the national economy that plaintiff is capable of performing.  [AR at 715-16.]  Accordingly, the

13  ALJ determined that plaintiff is not disabled.  [AR at 716.]

14

15                                    **V.**

16                         **THE ALJ'S DECISION**

17         Plaintiff contends that the ALJ failed to properly: (1) consider the relevant medical evidence;

18  (2) consider plaintiff's subjective complaints and assess plaintiff's credibility; and (3) assess the

19  vocational evidence.  [JS at 4-7, 10-14, 18-26.]  As set forth below, the Court agrees with plaintiff,

20  in part, and remands the matter for further proceedings.

21

22  **A.     DR. LANDAU'S TESTIMONY**

23         Plaintiff contends that the ALJ failed to properly consider the medical evidence concerning

24  plaintiff's symptoms and impairments. [AR at 4-7.]  Specifically, plaintiff asserts that the ALJ erred

25

26

27  ─────────────────

28     [2]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

1  in adopting, yet failing to clarify, the testimony of Dr. Samuel Landau, a non-examining medical

2  expert who testified at the first two administrative hearings.  [Id.]

3      At the first hearing on April 11, 2006, Dr. Landau testified that plaintiff suffers from obesity;

4  type II diabetes mellitus; a history of deep vein thrombophlebitis ("DVT") on his left leg with "a post

5  phlebitic syndrome" causing pain, swelling, stasis dermatitis, and edema on his legs; chronic

6  hepatitis C; degenerative disc disease of the lumbar spine; and a psychiatric diagnosis.  [AR at

7  673-75.]  Based on his review of the medical evidence, Dr. Landau opined that plaintiff, among

8  other activities, can stand and/or walk for two hours out of an eight-hour workday and, with normal

9  breaks and a provision to elevate his legs six inches above the floor as needed, can sit for six

10 hours in an eight-hour workday.  [AR at 673-74.]  On May 31, 2006, at the second hearing, Dr.

11 Landau provided essentially the same summary of the medical evidence concerning plaintiff's

12 impairments and his resulting functional limitations and capabilities.  [AR at 691-93.]  Dr. Landau

13 also testified that plaintiff's medical records indicate that he has gastroesophageal reflux and that

14 he has complained of lightheadedness and chest pain.  [AR at 693-95.]  In addition, Dr. Landau

15 noted that he would "expect [plaintiff] to be fatigued with the obesity and with diabetes."  [AR at

16 696.]  Plaintiff's attorney asked Dr. Landau if he thought that plaintiff's fatigue would impose any

17 additional limitations on his ability to work.  [Id.]  Dr. Landau provided the following partially

18 inaudible response: "That should be addressed by the [inaudible]."  [Id.]  In remanding this matter

19 to the ALJ for further proceedings in case No. ED CV 06-1387-PLA, this Court instructed the ALJ

20 "to clarify and further assess Dr. Landau's testimony" concerning plaintiff's functional limitations

21 associated with his fatigue.  [AR at 724 n. 5.]

22      Plaintiff's testimony and medical records indicate that he suffers from fatigue.  On April 11,

23 2006, plaintiff asserted that could stand for, at most, a total of one hour in an eight-hour day and

24 that he would be unable to sit for the remainder of the workday.  [AR at 677-78.]  Plaintiff explained

25 that standing up and stretching each hour would not enable him to sit for the majority of an eight-

26 hour workday because he would need to "lay down . . . or something."  [Id.]  On May 31, 2006,

27 plaintiff testified that he is "fatigued all the time."  [AR at 686.]  On June 11, 2008, plaintiff testified

28 that he has experienced increased tiredness and fatigue, he spends his days at home lying around

1    and watching television, and he does not go outdoors because he does not "have [the] drive to

2    do anything, no energy." [AR at 801-03.] In testifying that he could not perform the job of an

3    information clerk at a mall, plaintiff asserted that he could not constantly stay at an information

4    booth. [AR at 816-17.] Plaintiff explained, "I have to rest every so often. I don't think I could

5    spend the whole day doing that. . . [because] when I get tired and fatigued, I just get exhausted."

6    [Id.] Plaintiff also testified that his fatigue is so serious that even when "getting out of bed I get real

7    exhausted . . . [or] I get up feeling good sometimes in the morning . . . and I'll walk to the front

8    door, [and] just getting there . . . I have to go back and lay down." [AR at 817.] Plaintiff also

9    reported experiencing fatigue and tiredness during several of his medical examinations. For

10   example, on July 18, 2003, plaintiff reported that he had felt tired and weak for more than two

11   weeks [AR at 231], and on May 24, 2004, he complained of tiredness, weakness, and general

12   malaise lasting more than two weeks. [AR at 393, 396.] On October 27, 2004, during a physical

13   examination arranged by the Department of Social Services, the examining physician noted that

14   plaintiff has suffered from chronic fatigue associated with his poor liver functioning caused by

15   hepatitis C. [AR at 550, 554.] On February 11, 2007, plaintiff went to the emergency room and

16   complained of, among other symptoms, dizziness, and a review of his systems was consistent with

17   generalized weakness. [AR at 769.] Furthermore, plaintiff's medical records list "drowsiness" and

18   "unusual tiredness" as side effects associated with some of plaintiff's prescription medications.

19   [AR at 504, 506.]

20         If there are ambiguities or inadequacies in the record concerning medical treatment or

21   diagnoses that may affect the determination of disability, the ALJ has a duty to further develop the

22   record. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) ("Ambiguous evidence,

23   or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the

24   evidence, triggers the ALJ's duty to conduct an appropriate inquiry.") (quotation and citation

25   omitted). When medical records are inadequate to determine whether a claimant is disabled, the

26   ALJ must recontact the medical source, including the treating physician if necessary, to clarify the

27   ambiguity or to obtain additional information pertaining to the claimant's medical condition. See

28   20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1).

1    In the decision, the ALJ purportedly accounted for plaintiff's fatigue in the RFC

2    determination. [AR at 713.]  Specifically, the ALJ asserted that "due to [plaintiff's] complaints of

3    fatigue and an inability to be on his feet for long periods of time, I included a limitation to being on

4    his feet for no more than 15 minutes at one time (and for no more than two hours total during an

5    eight-hour workday)." [AR at 713.]  However, on remand, the ALJ did <u>not</u> clarify Dr. Landau's

6    partially inaudible testimony from the May 31, 2006, hearing concerning the effects of plaintiff's

7    fatigue, and neither Dr. Landau nor any other medical expert was called to testify at the June 11,

8    2008, hearing.  Since Dr. Landau's testimony was not clarified, it is unclear whether or to what

9    degree the medical expert believed that plaintiff's fatigue would impact his ability to work.

10   Furthermore, if plaintiff's fatigue <u>does</u> impact his ability to work, it is also unclear that the portion

11   of the ALJ's RFC determination purportedly addressing plaintiff's fatigue -- limiting plaintiff's

12   walking and/or standing to 15 minutes at a time for a total of two hours in an eight hour work day --

13   is sufficient to account for plaintiff's fatigue-related limitations.  Indeed, plaintiff's testimony

14   suggests that the ALJ's RFC determination would not sufficiently account for plaintiff's fatigue-

15   related limitations because plaintiff asserted that he would have difficulty getting out of bed to

16   attend any job and could not perform a job that would require him to stand for more than one hour

17   total or sit for extended periods of time without resting and lying down.  [AR at 677-78, 816-17.]

18   As such, the ALJ's failure to clarify the ambiguity concerning the effects of plaintiff's fatigue, as

19   directed by the Court in the November 14, 2007, Memorandum Opinion and Order, warrants

20   remand.[3]

21

22   **B.    PLAINTIFF'S SUBJECTIVE COMPLAINTS AND CREDIBILITY**

23       Plaintiff argues that the ALJ erred in finding him incredible. [JS at 10-14.]  Whenever an

24   ALJ discredits a claimant's testimony regarding subjective symptoms, including functional

25

26       [3]   To the extent plaintiff argues that the ALJ erred in crediting other parts of Dr. Landau's

27   testimony that conflict with plaintiff's alleged functional limitations [JS at 6-7], the Court has
     addressed plaintiff's concern below by instructing the ALJ to reconsider plaintiff's credibility,

28   subjective complaints, and RFC.

1   limitations, the ALJ must make explicit credibility findings.  See Rashad v. Sullivan, 903 F.2d 1229,

2   1231 (9th Cir. 1990); see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993) (if the ALJ does

3   not accept a claimant's testimony, he must make specific findings rejecting it).  The factors to be

4   considered in weighing a claimant's credibility include: (1) the claimant's reputation for

5   truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's

6   testimony and his conduct; (3) the claimant's daily activities; (4) the claimant's work record; and

7   (5) testimony from physicians and third parties concerning the nature, severity, and effect of the

8   symptoms of which the claimant complains.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th

9   Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c).  "It is not sufficient for the ALJ to make

10  only general findings."  Dodrill, 12 F.3d at 918.  Absent evidence showing that a plaintiff is

11  malingering, the ALJ must clearly identify evidence in the record undermining the plaintiff's

12  testimony to properly discredit his alleged limitations.  See id.; see also Reddick v. Chater, 157

13  F.3d 715, 722 (9th Cir. 1998) ("General findings are insufficient; rather, the ALJ must identify what

14  testimony is not credible and what evidence undermines the claimant's complaints.") (quoting

15  Lester, 81 F.3d at 834).  If properly supported, the ALJ's credibility determination is entitled to

16  "great deference."  See Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

17          In the second decision, although the ALJ found some of plaintiff's subjective symptoms and

18  limitations credible, the ALJ did not credit plaintiff's testimony that he cannot stand for more than

19  one hour total during an eight-hour workday, cannot sit for six hours total in an eight-hour workday,

20  and cannot work due to nausea and vomiting.  [AR at 713-15.]

21          The Court notes that the ALJ did not accurately characterize plaintiff's testimony concerning

22  his symptoms of vomiting and nausea.  In discrediting the limiting effects of plaintiff's nausea and

23  vomiting and in concluding that the symptoms would not interfere with plaintiff's RFC to work, the

24  ALJ asserted that plaintiff's testimony indicated he generally only experiences these symptoms

25  in the morning and once every other week, and that he infrequently reported these symptoms to

26  his doctors.  [AR at 714; citing AR at 769, 777.]  However, although plaintiff did say that he

27  "mainly" vomits in the morning, he clarified that he does not only vomit in the morning and that he

28  is "nauseated all through the day."  [AR at 807.]  Plaintiff also testified that he will vomit as

frequently as twice a week, that his nausea "comes and goes," and that his nausea is "about the same" whether he is standing and walking or sitting down. [AR at 807-08.] Furthermore, the medical evidence indicates that plaintiff more regularly reported his symptoms of nausea and vomiting to his doctors than suggested by the ALJ [see, e.g., AR at 226, 393, 396, 570, 599, 600], and that some of his medications have the side effect of nausea and stomach upset. [AR at 509, 511.]

As the ALJ's credibility findings might otherwise change on remand with the clarification and reconsideration of Dr. Landau's testimony, the Court will not discuss the ALJ's remaining credibility findings. [AR at 713-14.] On remand, once Dr. Landau's testimony concerning the effects of plaintiff's fatigue has been clarified, the ALJ must reconsider all of plaintiff's subjective symptoms and limitations and make accurate credibility determinations with regard to each symptom and limitation alleged.

## C.    VOCATIONAL EVIDENCE

Plaintiff asserts that the ALJ improperly considered the vocational evidence. Specifically, plaintiff contends that the ALJ erred in determining plaintiff's RFC and relying on the vocational expert's testimony. [JS at 18-26.] As the RFC and vocational determinations might be affected once Dr. Landau's testimony is clarified and plaintiff's credibility regarding his alleged symptoms and limitations is reassessed, the ALJ must also redetermine plaintiff's RFC and, if necessary, obtain additional vocational expert testimony at that time.

## VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to: 1) clarify Dr. Landau's testimony concerning the effect that plaintiff's fatigue has on his ability to work, and if necessary, further develop the medical

1  evidence and/or obtain additional medical expert testimony; 2) reassess plaintiff's subjective

2  complaints, credibility, and RFC; and 3) if necessary, obtain additional vocational expert testimony

3  in light of the reconsidered evidence.  The ALJ is instructed to take whatever further action is

4  deemed appropriate and consistent with this decision.

5         Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**;

6  (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant

7  for further proceedings consistent with this Memorandum Opinion.

8

9

10  DATED: December 14, 2009

                                   _____
                                            PAUL L. ABRAMS
11                                 UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28